396 B.R. 500 (2008)
Greta CAMPBELL, Debtor.
Weik and Associates P.C., Appellant,
v.
Krispen S. Carroll, Chapter 13 Trustee, Appellee.
No. 08-12964. Bankruptcy No. 06-58897.
United States District Court, E.D. Michigan, Southern Division.
October 22, 2008.
*501 Terri Weik, Weik and Associates, P.C., Warren, MI, for Debtor.

OPINION
DAVID M. LAWSON, District Judge.
This appeal was commenced by a Chapter 13 debtor's attorney to challenge an order entered by the bankruptcy court approving attorney's fees for post-confirmation work. Weik and Associates, P.C., appellant and counsel for the debtor, claims that the fee order improperly disallowed.9 hours of billed time at $200 per hour, for a total of $180, and the bankruptcy court thus abused its discretion. However, the fee order was entered pursuant to a stipulation that the appellant attorney signed. The fees awarded are in the exact amount recited in the stipulation the appellant signed with the Chapter 13 trustee. Although the appellant now seeks to challenge the general guidelines discussed on the record by the bankruptcy judge before the stipulation ultimately was drafted, this Court finds that the appellant has waived its right to appeal that order by agreeing to its terms in the bankruptcy court. Therefore, the order approving post-confirmation fees is affirmed.

I.
On December 19, 2006, Greta Campbell filed a voluntary petition for relief under Chapter 13 of the bankruptcy code. Her plan was confirmed on March 16, 2007. On August 1, 2007, counsel conducted a post-confirmation review of the file, presumably to monitor compliance with the plan. The law firm charged 1.4 hours for that service. Fees relating to that review are not in dispute in this appeal.
The dispute in this case centers around a second post-confirmation review by the debtor's counsel performed on April 23, 2008. In its fee petition, counsel stated that 1.2 hours were spent on that review, broken down in the following manner:

 Hours Amount
Post Confirmation file review. 0.20 40.00
Accessed Pacer. Reviewed Docket Report and Claims Register. 0.20 40.00
Accessed Trustee system for pay history, claims, disbursements, payees,
 and plan calc. 0.30 60.00
Compared Claims Register with filed Claims in file, Schedules, and
 Trustee System. 0.20 40.00
Prepared report for file. 0.10 20.00
Drafted letter to Debtor re: status of case, and request for Debtor to
 submit Federal income tax refunds/returns. 0.20 40.00

Second App. for Comp., Ex. 5 [case no. 06-58897, dkt. #45]. This work was performed by Shannon R. Warner at a billable rate of $200. per hour, for a total of $240. Other charges, which are not in dispute, brought the total fee application of May 23, 2008 to $493.78 in professional services plus $5.66 in costs.
*502 The trustee objected to the fee petition as excessive because there had been a prior review within the preceding year, no pleadings or other case activity had been filed to prompt such a review, and the amount of time charged for the described work was unreasonably large. The time spent searching the docket, the trustee noted, was especially unusual in light of the bankruptcy court's electronic filing system, which notifies counsel immediately of case activity. The trustee also noted that the time entries were "pro forma" and duplicated the work performed in August 2007.
The bankruptcy court consolidated the fee petition with three other fee petitions by the same law firm and held a hearing on all of them on June 25, 2008. One of the four applications was presented in the form of a rehearing motion of a prior fee request that was rejected by the bankruptcy court. At the hearing, the court asked counsel to explain what work was included in the description "file review." She responded with this explanation:
[W]hat we do in that case, we review the file, review  make sure that there are  if we've gotten any correspondences from any creditors or any documentation and notices from creditors or from the debtor just to make any new payments  or not payments  I'm sorry  any pay advices, anything like that, for the debtor and make sure everything is adding up with what we have, both what's been filed with the Court in the docket report as well as the information that we have in the file. We go through a thorough review of everything that has taken place, any  review any motions, ensure that any  if we've done a plan modification  well, in the past before the new local rules took place that the order had been entered double-checking all that kind of thing.
Then with regard to the second  we reviewed the docket report again to make sure that there were  there's nothing that has been filed that we do not have in our files or that could affect the debtor's case as well as the claims register, any new claims that have been filed, how they  if there happen 
Hr'g Tr. at 7-8.
After the court questioned other time entries, the court proceeded to offer guidance on how petitions for post-confirmation attorney's fees should be evaluated. The court first stated that post-confirmation reviews are reasonable and necessary. It then suggested some "default guidelines" as to how often they should take place and how much time ought to be spent, noting that "there are cases in which a more frequent review is justified and cases perhaps in which a less frequent review is justified." Hr'g Tr. at 18. The court concluded that an initial review six months after confirmation is prudent, but then reviews more frequently than annually would require additional justification. As to the time required, the court believed that spending more than half-an-hour on second and subsequent reviews would require special justification. The court observed that none existed in these cases. But then the court concluded:
[S]o I'm going to ask counsel to work together to apply these guidelines to these four fee applications and see if you can agree upon what my ruling would be if it had to be presented to me and submit an order and be guided accordingly in the future.
Hr'g Tr. at 20.
On July 8, 2008, the law firm and the trustee submitted a stipulation to the court for the payment of the following fees:
Prior award for fees: $ 3,367.50
Prior award for cost: $ 7.95

*503 Total award to date: $ 3,375.45 Present award for fees: $ 313.78 Present award for cost: $ 5.66 Present award: $319.44
TOTAL OF FEES AND COSTS $ 3,694.89
Case No. 06-58897, dkt. # 52. The same day, the bankruptcy court entered an order containing the identical language. As it turned out, the stipulation and resulting order reduced the requested fee award by $180, or a reduction of 0.9 hours of attorney time.
The appellant filed a notice of appeal from that order. After briefing, the Court heard oral argument on the appeal on October 21, 2008.

II.
This Court has appellate jurisdiction over the final orders of the bankruptcy court, and an order conclusively granting or denying attorney's fees to a debtor's attorney constitutes such a final order. 28 U.S.C. § 158(a)(1); In re Boddy, 950 F.2d 334, 336 (6th Cir.1991). Bankruptcy courts are required to determine the reasonableness of attorney's fees claimed by the debtor's attorney based on the "benefit and necessity" of such services to the debtor. 11 U.S.C. § 330(a)(4)(B) (stating that "[i]n a chapter 12 or chapter 13 case in which the debtor is an individual, the court may allow reasonable compensation to the debtor's attorney for representing the interests of the debtor in connection with the bankruptcy case based on a consideration of the benefit and necessity of such services to the debtor and the other factors set forth in this section"). The Court reviews the bankruptcy court's determination regarding the amount of attorney's fees for an abuse of discretion. In re Boddy, 950 F.2d at 336. "A bankruptcy court abuses its discretion when `it relies upon clearly erroneous findings of fact or when it improperly applies the law or uses an erroneous legal standard.'" In re DSC, Ltd., 486 F.3d 940, 944 (6th Cir.2007) (quoting In re Eastown Auto Co., 215 B.R. 960, 963 (6th Cir. BAP 1998)).
The appellant argues that the bankruptcy court abused its discretion in adjudicating the fee petition in this case by allowing only half-an-hour of attorney time, thereby establishing a blanket fee. Instead, appellant insists, the court should have used the lodestar method to assess the reasonableness of the fee claimed.
This Court does not agree with appellant's characterization of the bankruptcy court's "ruling." In fact, an examination of the transcript of the hearing discloses that the court made no ruling at all. Instead, it set forth guidelines and instructed counsel to see if they could agree to a resolution. That resolution was presented to the court in the form of a stipulation. Indeed, there is no indication in the stipulation or the resulting order that the appellant contested the outcome of its fee petition in the bankruptcy court.
The Supreme Court has long recognized that a party may not appeal an order with which he agreed in the court below. See United States v. Swift & Co., 286 U.S. 106, 116-17, 52 S.Ct. 460, 76 L.Ed. 999 (1932) ("We do not turn aside to inquire whether some of these restraints upon separate as distinguished from joint action could have been opposed with success if the defendants had offered opposition. Instead, they chose to consent, and the injunction, right or wrong, became the judgment of the court."); Swift & Co. v. United States, 276 U.S. 311, 324, 48 S.Ct. 311, 72 L.Ed. 587 (1928) (noting that "`a decree, which appears by the record to have been rendered by consent is always affirmed, without considering the merits of the cause'" (quoting Nashville, Chattanooga *504 & St Louis Ry. Co. v. United States, 113 U.S. 261, 5 S.Ct. 460, 28 L.Ed. 971 (1885)); Pacific R.R. v. Ketchum, 101 U.S. 289, 295, 25 L.Ed. 932 (1879) (holding that "[i]f, when the case gets here, it appears that the decree appealed from was assented to by the appellant, we cannot consider any errors that may be assigned which were in law waived by the consent. ..."). Parties who enter into consent decrees waive their right to appeal those issues, see United States v. Armour & Co., 402 U.S. 673, 681, 91 S.Ct. 1752, 29 L.Ed.2d 256 (1971); McCuiston v. Hoffa, 202 Fed. Appx. 858, 864 (6th Cir.2006), and "[stipulations [of facts] voluntarily entered by the parties are binding, both on the district court and on [the appellate court]," Federal Deposit Ins. Corp. v. St. Paul Fire and Marine Ins. Co., 942 F.2d 1032, 1038 (6th Cir.1991).
Applying this reasoning, the courts have found that "[w]here the parties have agreed to entry of an order or judgment without any reservation relevant to the issue sought to be appealed, one party may not later seek to upset the judgment, unless lack of `actual consent' or a failure of subject matter jurisdiction is alleged." Dorse v. Armstrong World Industries, Inc., 798 F.2d 1372, 1375 (11th Cir.1986); see also March Point Cogeneration Co. v. Puget Sound Power and Light Co., 232 F.3d 895, 2000 WL 875318, at *1 (9th Cir. Jun.30, 2000) (table) ("Puget Sound stipulated to the order, pursuant to which the documents were produced, so it waived any appeal of the order itself."); Haitian Refugee Center v. Civileitti, 614 F.2d 92, 93 (5th Cir.1980). "An exception to this longstanding rule exists where a party specifically preserves its right to appeal." Slaven v. American Trading Transp. Co., Inc., 146 F.3d 1066, 1070 (9th Cir.1998); see also Association of Community Orgs, for Reform Now v. Edgar, 99 F.3d 261, 262 (7th Cir.1996) (Posner, J.) ("A party to a consent decree or other judgment entered by consent may not appeal unless it explicitly reserves the right to appeal.").
The Sixth Circuit has endorsed the use of stipulations as serving a useful purpose:
Stipulations serve the purpose of conserving judicial resources and allowing the parties to focus on truly disputed issues. Everyone benefits when parties agree to make stipulations. It saves the parties the time and money of proving facts that are not in dispute but that are nonetheless necessary to the outcome of the dispute. It saves time and energy for judges and juries who don't have to hear evidence about what the parties are willing to agree about. And it saves the public money, by making trials shorter and clearing space on the docket.
Federal Deposit Ins. Corp., 942 F.2d at 1038. The stipulated order entered by the bankruptcy court accomplishes these purposes. The court entertained argument concerning the trustee's objections to the appellant's fee petitions, offered guidance as to how it would evaluate such requests, and invited counsel to attempt a resolution in light of the insight offered by the court. The court never granted or denied the fee petition. Instead, the parties evidenced their agreement by the stipulation they filed, and the court confirmed that agreement by entering the order.
The appellant has waived its right to challenge an order to which it stipulated in the lower court. Moreover, it is apparent that the bankruptcy court utilized a lodestar amount in suggesting its guidelines, which is calculated by "multiplying the attorney's reasonable hourly rate by the number of hours reasonably expended." Grant v. George Schumann Tire & Battery Co., 908 F.2d 874, 879 (11th Cir.1990) (citing Hensley v. Eckerhart, 461 U.S. 424, 433, 103 S.Ct. 1933, 76 L.Ed.2d *505 40 (1983)). That method, of course, is informed by 11 U.S.C. § 330, which provides, in part, for "reasonable compensation for actual, necessary services rendered... based on the nature, the extent, and the value of such services, the time spent on such services, and the cost of comparable services other than in a case under this title. ..." 11 U.S.C. § 330(a)(1). It is the fee petitioner's burden to establish the reasonableness of the fee request. As this Court has explained:
To meet its burden, the fee petitioner must "submit evidence supporting the hours worked and rates claimed." Hensley v. Eckerhart, 461 U.S. 424, 433[, 103 S.Ct. 1933, 76 L.Ed.2d 40] (1983) (deciding fee petition under 42 U.S.C. § 1988). "The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." Id. See also Adcock-Ladd v. Secretary of Treasury, 227 F.3d 343, 349 (6th Cir. 2000). Courts should exclude hours that are not reasonably expended. Hensley, 461 U.S. at 433[, 103 S.Ct. 1933]. Hours are not reasonably expended if they are excessive, redundant, or otherwise unnecessary. Id. "A fee is clearly excessive when, after a review of the facts, a lawyer of ordinary prudence would be left with a definite and firm conviction that the fee is in excess of a reasonable fee." Mich. R. Prof'] Conduct (MRPC) 1.5.
After determining the number of hours reasonably expended, the court must examine whether the requested hourly rate is reasonable. Adcock-Ladd, 227 F.3d at 349. Generally, a reasonable hourly rate is to be calculated according to the prevailing market rates in the relevant community. Blum v. Stenson, 465 U.S. 886, 895[, 104 S.Ct. 1541, 79 L.Ed.2d 891] (1984). This determination is made, in turn, by assessing the experience and skill of the prevailing party's attorneys and comparing their rates to the rates prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation. Id. at 895 n. 11[, 104 S.Ct. 1541]. See also MRPC 1.5.
Mehney-Egan v. Mendoza, 130 F.Supp.2d 884, 885-86 (E.D.Mich.2001) (footnote omitted).
The bankruptcy court incorporated all of these concepts in discussing its "default guidelines." The court did not impose a blanket rule on all post-confirmation review fee petitions, but rather it suggested what one would expect in the ordinary case in order to distinguish requests that otherwise would appear "excessive, redundant, or otherwise unnecessary." The court left plenty of room for counsel, to justify a greater request, which the appellant did not do in this case.
The Court finds that the bankruptcy court's approach to the problem was reasonable and consistent with the law governing attorney's fee requests. And since the appellant stipulated to the order approving fees, it waived its right to complain.

III.
The Court finds that the bankruptcy court did not abuse its discretion in approving the fee petition. Accordingly, the order of the bankruptcy court is AFFIRMED.